IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2004

## MABLE LONGMIRE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-25895      Joseph B. Dailey, Judge**

─────────────

**No. W2003-01566-CCA-R3-PC  - Filed July 20, 2004**

─────────────

The Defendant, Mable Longmire, was convicted by a jury of first degree premeditated murder. Her conviction was affirmed on direct appeal. See State v. Mabel[1] J. Longmire, No. W1999-00216-CCA-R3-CD, 2001 WL 128561 (Tenn. Crim. App., Feb. 15, 2001, Jackson).  The Defendant subsequently filed for post-conviction relief, alleging ineffective assistance of counsel.  After an evidentiary hearing, the trial court denied relief and this appeal followed.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

R. Price Harris, Memphis, Tennessee, for the appellant, Mable Longmire.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant learned that her husband was having an affair with the victim.  She went to New Orleans to visit a friend and contemplate her situation.  While in New Orleans, she went on a drinking binge.  After several days, she drove home to Memphis, stopping at a cousin's home on the way.  The Defendant took a pistol from her cousin's house before leaving.  Eventually, the Defendant drove to the victim's house and waited for the victim to return.  A confrontation ensued during which the Defendant shot the victim.  The State's proof at trial established that, after shooting

─────────────

[1]The Defendant's first name in her petition for post-conviction relief is spelled "Mable."  It is spelled "Mabel" in the style of the opinion disposing of her direct appeal from her conviction.

the victim initially, the Defendant walked away. The victim cried out for help, and the Defendant returned to the victim's location. The Defendant then shot the victim several more times, killing her.

The Defendant defended on the basis that she lacked the requisite mental capacity to form the mens rea required for premeditated murder. She introduced proof at trial that, prior to the shooting, she had been diagnosed with depression and had been prescribed medication. She stopped taking the medication at the time of her trip to New Orleans. A psychologist evaluated the Defendant after the shooting and determined that she suffered from a severe and recurrent major depressive disorder. The psychologist testified that this type of disorder affected the Defendant's judgment and caused her thinking to be unclear. The psychologist testified that, since the Defendant had not been taking her medications at the time of the shooting, her abilities relating to judgment and mental function could have been significantly affected. She also testified, however, that in her opinion, the Defendant was able to appreciate the nature and wrongfulness of her behavior.

The jury rejected the Defendant's claim of "diminished capacity" and convicted her of first degree premeditated murder. On direct appeal, this Court determined that the evidence was sufficient to support the Defendant's conviction. See State v. Mabel J. Longmire, No. W1999-00216-CCA-R3-CD, 2001 WL 128561 (Tenn. Crim. App., Feb. 15, 2001, Jackson).

The Defendant now contends that her lawyers were ineffective during their representation of her prior to and at trial. Specifically, she claims in this appeal that her lawyers failed to properly investigate the facts of her case, failed to seek a continuance upon a defense witness's failure to appear, and failed to adequately present the defense of diminished capacity.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law-- such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

The Defendant testified on her own behalf at the post-conviction hearing; she called no other witnesses. She stated that the first time she met with her lawyer, Mr. Michael Johnson, he told her that she was facing a sentence of twenty-five years to life, prior to his even discussing the facts of the case with her. She felt that this was a form of "scare tactics" on her lawyer's part. She gave him the name of one witness, her girlfriend in New Orleans. This woman did not appear at trial. Ms. Longmire testified that this woman would have been able to testify about Ms. Longmire's state of mind immediately prior to the killing. Ms. Longmire remembered meeting with the psychologist while she was in jail. Ms. Longmire testified that her lawyers should have pursued a theory of self-defense because the victim slapped her before Ms. Longmire shot her.

Ms. Garlan Erguden, one of the Defendant's lawyers, testified on behalf of the State. She explained that neither she nor Mr. Johnson had previously presented a "diminished capacity" defense, and so they both researched the issue and both discussed the theory with the psychologist. She testified that the psychologist gave them several textbooks and met with them several times "to

make sure [they] understood, thoroughly, how to handle one of these diminished-capacity defenses and what to anticipate, in the way of response, from the attorney general's office." Ms. Erguden also assisted Mr. Johnson in meeting and conferring with Ms. Longmire.

Ms. Erguden testified that, given the State's proof and Ms. Longmire's history of mental health problems, she and Mr. Johnson determined that they had a strong diminished-capacity defense, and that it was the "only reasonable defense" in light of the State's eyewitness proof of the circumstances of the shooting. They called two expert witnesses on the Defendant's behalf. They obtained jury instructions on diminished capacity. They also subpoenaed the Defendant's friend in New Orleans, but the woman failed to appear at trial. This witness had previously demonstrated a reluctance to testify on behalf of the Defendant and, given the strength of the expert testimony, Ms. Erguden and Mr. Johnson determined that trying to force her to testify would not be beneficial to the Defendant's case. Prior to trial, they had also spoken to the Defendant's husband and teenage son, but determined that neither of those persons would be helpful to the Defendant's case.

Mr. Michael Johnson also testified, and stated flatly that he did not tell the Defendant at their initial meeting that she was facing a sentence of twenty-five years to life in prison. Mr. Johnson also echoed Ms. Erguden's testimony about the missing witness: that she was not crucial and her absence from the trial did not have a pivotal effect on the Defendant's case. Mr. Johnson described his initial meeting with the Defendant and stated that he "had her evaluated almost immediately." He determined that their only defense was diminished capacity, that self-defense would not work. He felt that their proof of diminished capacity was very strong.

Mr. Johnson testified that the Defendant was "an excellent client." He believed that the jury's verdict was "an unjust result." He stated, "I really wanted to win this case for my client. . . . I guess I'm bothered by it most because there's nothing I would have done differently."

The trial court ruled that "the assistance provided by Mr. Johnson and Ms. Erguden was outstanding in every regard. They rendered thorough, conscientious, and professional representation to the defendant in this case." Accordingly, the trial court dismissed the Defendant's petition for post-conviction relief.

We find no error in the trial court's ruling. The record supports the trial court's conclusion that the Defendant received the effective assistance of counsel. We affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE
